**UNITED STATES of America, Plaintiff,**

v.

**W.R. GRACE, Alan R. Stringer, Henry A. Eschenbach, Jack W. Wolter, William J. McCaig, Robert J. Bettacchi, O. Mario Favorito, Robert C. Walsh, Defendants.**

**No. CR 05–07–M–DWM.**

United States District Court, D. Montana, Missoula Division.

Aug. 29, 2006.

Kris A. McLean, Office of the U.S. Attorney, Missoula, MT, William W. Mercer, Office of the U.S. Attorney, Billings, MT, Thomas L. Sansonetti, David M. Uhlmann, U.S. Department of Justice, Washington, DC, for Plaintiff.

Angelo J. Calfo, Harold Malkin, Michelle K. Peterson, Yarmuth Wilsdon Calfo, Seattle, WA, Michael F. Bailey, Bailey & Antenor, William Adam Duerk, Michael J. Milodragovich, Milodragovich Dale Steinbrenner & Binney, Missoula, MT, David S. Krakoff, Gary A. Winters, James T. Parkinson, Mark Holscher, Mayer Brown Rowe Maw LLP, Washington, DC, Ronald F. Waterman, Gough Shanahan Johnson & Waterman, Palmer A. Hoovestal, Hoovestal Law Firm, Helena, MT, Jeremy Maltby, O'Melveny & Myers, Los Angeles, CA, Elizabeth Van Doren Gray, Sowell Gray Stepp & Lafitte, Columbia, SC, William A. Coates, Roe Cassidy Coates & Price, Greenville, SC, Stephen R. Spivack, Bradley Arant Rose & White, Washington, D.C., David E. Roth, Bradley Arant Rose & White LLP, Birmingham, AL, for Defendants.

## ORDER

MOLLOY, Chief Judge.

### I. Introduction[1]

Before the Court is Defendants' motion in limine to exclude expert opinions regarding historical, non-ambient air product and commercial testing by W.R. Grace. Defendants' assert that such expert testimony does not satisfy the requirements of Federal Rule of Evidence 702 as interpreted by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The Government opposes the mo-

---

1. The facts of this case are well known to the Court and the parties and will be recited here only when necessary. *See U.S. v. W.R. Grace*, 233 F.R.D. 586, 587–88 (D.Mont.2005).

tion. For the following reasons, I find that such expert opinion and testimony is admissible for the purpose of assisting the jury in making determinations about the Defendants' knowledge. The evidence is inadmissible for the purpose of proving a release under 42 U.S.C. § 7413(c)(5)(A).

## II. Background

Rule 702 governs the admissibility of expert testimony. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court established that trial courts are obligated to perform a gatekeeping role with respect to expert testimony. 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). That obligation was characterized by the Court as requiring trial judges to vet proffered scientific and technical evidence for the purpose of ensuring that it "is not only relevant, but reliable." *Id.* at 589, 113 S.Ct. 2786. The Court went on to identify four possible factors a trial court might use in conducting its 'reliability' analysis: "[1] whether the theory or technique employed by the expert is generally accepted in the scientific community; [2] whether it's been subjected to peer review and publication; [3] whether it can be and has been tested; and [4] whether the known or potential rate of error is acceptable." *Daubert II*, 43 F.3d at 1316, (formulating *Daubert*, 509 U.S. at 593–594, 113 S.Ct. 2786). Later cases have made clear that these factors are not exclusive, and that trial courts have wide latitude in making both the determination of whether an experts testimony is reliable and in deciding which factors go into making that determination. See, e.g. *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

■ Assessing the relevance of expert testimony under *Daubert* involves making a determination as to whether the testimony is sufficiently tied to facts of the case to be useful to the trier of fact in resolving a factual dispute. 509 U.S. at 591, 113 S.Ct. 2786. Relevant expert testimony is that based upon evidence that has a valid scientific connection to material facts in dispute. *Id.* at 591, 113 S.Ct. 2786.

## III. Analysis

Defendants argue that evidence and expert testimony derived from non-ambient product and commercial testing conducted by Grace in the '70s and '80s is irrelevant to the Clean Air Act counts. It is irrelevant, they claim, because § 7413, the Act's "knowing endangerment" provision, provides criminal penalties only for those releases of pollutants that occur in the ambient air. Since the historical testing was conducted in indoor environments on releases not falling within the ambit of the provision, Defendants maintain that evidence derived from, or testimony based on, these releases is irrelevant to the conduct charged.

■ Defendants fail to acknowledge that the "knowing endangerment" provision requires more than that a release be made into the "ambient air" in order for liability to attach. It also requires that that release be a knowing release, and that the actor making the release "knows at the time that he thereby places another person in danger of death or serious bodily injury" 42 U.S.C. § 7413(c)(5)(A). To the extent that historical non-ambient testing and sampling conducted informed the Defendants of the dangerousness of the asbestos contaminated vermiculite, the determination of which includes the nature of its friability, it is relevant to the knowledge requirement of the charges based upon knowing endangerment, and is admissible under Federal Rule of Evidence 401. Expert opinions based upon an examination of these studies could aid the jury in making a determination about the nature of Defendants' knowledge and are consequently admissible under Federal Rule of Evidence 702.

■ Defendants object that Drs. Lemen and Rose, and others, may offer opinions about the characteristics and dangerousness of the asbestos contaminated vermi-

culite around Libby (the sources of the releases for which Defendants have been charged) based upon their examination of historical non-ambient product sampling and that any such testimony is prohibited by standards set out in *Daubert*. They claim that any attempt at "correlating" the results of the testing with ambient releases of asbestos from the alleged deposits in Libby requires a scientific methodology, that the Government and its experts have not proposed any such methodology because no such methodology exists, and thus, that any such correlations are scientifically unreliable and do not survive *Daubert* scrutiny.

The Government contends that the Defendants are making too much out of the concept of methodology in their attempt to exclude this testimony. It maintains that its experts are not relying on an untested theory or technique as a basis for their analysis, but instead are providing opinions based upon an examination of the data available to them, of which the historical product data is a part.

The Defendants' objections to the applicability of the sampling data derived from non-ambient historical product testing are of two kinds. The first relates to the difficulty in correlating exposure levels generally. Defendants maintain that exposure levels are too dependant upon such variables as distance, environmental conditions, and the physical state of the source material for the product data to be relevant to the charged releases. The second deals with what they describe as inadequacies in the method used to measure asbestos fibers in the historical testing.

Although couched in terms of "unreliability," Defendants objection to the proffered testimony concerns the relevance or "fit" prong of the *Daubert* analysis. The argument is that the historical product testing was performed in a manner insuffi-

ciently similar to the charged conduct for the data generated from the testing to be useful in assessing Defendants culpability under § 7413(c)(5)(A). In essence, Defendants' argue that even if these tests accurately sampled what they were designed to sample, the results obtained are irrelevant for the purposes of establishing the fiber concentrations and level of risk associated with the charged releases.

This argument is compelling. The testing at issue was conducted on materials and in circumstances substantially different than the sources of the alleged releases. Not only were the tests "non-ambient," they were also not designed to approximate the conditions of the releases for which Defendants are being charged. Their relevance in making determinations about the asbestos fiber concentrations in the alleged releases is limited. Any attempt to prove the concentration of asbestos fibers released into the air in, or the risk to health posed by, any particular ambient release for which the Defendants are being charged through the use of data obtained by historical product testing fails the "fit" requirement of *Daubert*.

The second objection can be viewed as a methodological one, i.e., that the testing was performed in a manner which did not obtain reliable results because of deficiencies in the method of fiber collection. Phase Contrast Microscopy (PCM) appears to be a widely used method of particulate analysis. That this method is arguably not as accurate as Transmission Electron Microscopy (TEM) is an issue speaking to the weight of the evidence, and is properly addressed through cross-examination.

## IV. Order

For the foregoing reasons IT IS HEREBY ORDERED that Defendants' motion to exclude expert testimony regarding his-

torical non-ambient air product and commercial testing is GRANTED as to testimony designed to prove a release under 42 U.S.C. § 7413(c)(5)(A). It is DENIED with respect to such testimony offered for the purpose of assisting the jury in making determinations about the Defendants knowledge of the dangerousness of the asbestos contaminated vermiculite.